## Luzerne County *versus* Glennon.

1. For the purpose of classification of counties under the Salary Acts, the United States decennial census is the sole test of population. The population at any intermediate time cannot be proved, as a fact, but each county must remain in the class in which the last census found it until it is transferred to another class by a subsequent census.

2. A statement, in a case stated, that when a certain county officer entered on his official duties the population of the county "was over 150,000, and less than 250,000, based upon the reasons incorporated in the following paragraph," is not such an admission of the fact as will warrant a judgment based upon it.

April 15th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Luzerne county*: Of January Term 1885, No. 449.

Case stated, wherein Joseph H. Glennon, Recorder of Deeds of the county of Luzerne, is plaintiff, and Luzerne county defendant, in which the following facts were agreed upon in the

nature of a special verdict, each party reserving the right to a writ of error.

1. That Joseph H. Glennon was elected Recorder of Deeds, etc., in and for Luzerne county at the general election in the fall of 1883, and having duly qualified entered upon the duties of his office on the first Monday in January, 1884, and is still in office discharging said duties.

2. That in 1880, when the last decennial census was taken, the population of Luzerne county was one hundred and thirty-three thousand and sixty-six, and when the said plaintiff entered on his official duties the population of Luzerne county was over one hundred and fifty thousand and less than two hundred and fifty thousand, based upon the reasons incorporated in the following paragraph:

3. That the population of Luzerne county when the plaintiff entered on his official duties is determined by getting at the ratio between the taxables of Luzerne county and the population of the same for the year 1880, as ascertained by the decennial census of that year, and then multiplying the number of taxables of Luzerne county for the year 1883 by the ratio aforesaid. The assessment books of 1880 in the Commissioners' office of said county show the number of taxables for that year to be thirty-five thousand six hundred and thirty-three, the population of the county for the same year, as per the decennial census for that year was one hundred and thirty-three thousand and sixty-six, and that the ratio existing between these last two numbers is three and seven hundred and thirty-four thousandths (3.734). That the assessment books of 1883 in the Commissioners' office of said county show the number of taxables for that year to be forty-two thousand six hundred and eighty-five, and that this number of taxables multiplied by the ratio three and seven hundred and thirty-four thousandths (3.734) amounts to one hundred and fifty-nine thousand three hundred and eighty-five.

4. That the population of Luzerne county in 1870, was, as determined by the decennial census of that year, one hundred and sixty thousand nine hundred and fifteen; and therefore it is contended by the plaintiff that, under the provisions of the Act of May 11th, 1881 (P. L., 21), Luzerne county is still under the provisions of the Salary Act of March 31st, 1876.

5. That the said plaintiff made out against the county of Luzerne a bill amounting to $291.66 for his salary for the month of January, 1885, under the Salary Act of March 31st, 1876, which the Commissioners of said county, upon presentation of the said bill to them refused to pay.

6. That the earnings of the said plaintiff as Recorder of the

[Luzerne County *v.* Glennon.]

said county for the month of January, 1885, after deducting therefrom all clerk hire for the said month, was greater than the amount of the bill aforesaid, and that the said plaintiff, before making out and presenting his bill, complied with all the requirements of said Act of 1876, but the said county withheld payment of said bill, because the Commissioners of said county were advised and were and are now of the opinion that the said plaintiff was not entitled to compensation under the provisions of the said Act of 1876, because Luzerne county, at the taking of the decennial census for the year 1880 contained a population of less than one hundred and fifty thousand, and hence the plaintiff, elected to and entering upon the duties of his office afterwards and before another decennial census, was not within the provisions of the said Act of 1876, and that the second section of the Act of 1881, above referred to, is unconstitutional.

7. If the court should be of opinion that, under the facts as stated, as matter of law, the said plaintiff is entitled to compensation under the provisions of the Salary Act of March 31st, 1876, then judgment to be entered in his favor and against the county of Luzerne for the sum of $291.66; if otherwise, then judgment to be entered generally against the county of Luzerne.

The following opinion of the court was filed:

This is an amicable action and case stated in which the court is asked to decide whether, upon the admitted facts, Joseph H. Glennon, Recorder of Deeds (elected in November, 1883) is entitled to be paid under the Salary Act of March 31st, 1876 (P. L., 13), or the Act of June 22d, 1883 (P. L., 139).

1. In the first place, the plaintiff contends that Luzerne county is still under the Act of 1876, by virtue of the provisions of Sect. 2, Act May 11th, 1881 (P. L., 22), notwithstanding the decennial census of 1880 showed that the county had, at that time, less than one hundred and fifty thousand inhabitants. We cannot assent to this proposition. Even though it be conceded that the section was intended to have a retroactive effect upon the status of the county, and also that, giving it that effect, the section would not be in contravention of Sect. 3, Art. III, of the Constitution, still it would not prevent the subsequent Act of 1883 going into effect. All that the section undertakes to do, at the very most, is to preserve the schedule of salaries in counties within the purview of the Act of 1876 "until altered by Act of Assembly." There is nothing in this section to prevent the Legislature from passing a subsequent general law to regulate salaries in counties which, in fact contain less than one hundred and fifty thousand inhabitants.

2. In the second place, the plaintiff contends that he is to be compensated according to the Act of 1876, because, as matter of fact, on the first Monday in January, 1884, when he assumed the duties of his office, the county contained more than one hundred and fifty thousand inhabitants, notwithstanding the decennial census of 1880 shows that, at that time, it contained less. In the case of Luzerne county v. Griffith, 1 Kulp, 297, this court said : " In the absence of express legislative declaration of the fact, or of any other method provided by the Legislature for ascertaining it, the last preceding decennial census is to be resorted to as the best evidence of the population of a county in case of classification of counties by population." In the subsequent cases of Harris v. County, 2 Kulp, 106, and Monroe v. County, 7 Out., 278, the rule was stated by us in substantially the same language, except that the words " or other proof " were added. The question finally came before the Supreme Court, and it was there held as follows : " Whenever an effort is made to apply this Act (31st March, 1876) to an officer of any particular county, the fact to be ascertained is whether the county contained sufficient population at the time the officer entered on the duties of his office. Whatever the population may previously have been or what it may hereafter become does not control the case." It will be seen from the foregoing that the population of a county in any particular year is a matter susceptible of proof like any other fact, in any suit in which the question is involved, and is also a proper subject of agreement by the parties, if they see fit to dispense with proof. As in the case cited (Monroe v. County, 7 Out., 278) so here, the question as to the mode of proving the fact does not arise, for the case stated contains the following distinct agreement, that " when the said plaintiff entered on his official duties the population of Luzerne county was over one hundred and fifty thousand and less than two hundred and fifty thousand." The effect of this admission, for the purposes of the present suit, is to dispense with proof, and we cannot see that its effect as an admitted fact is destroyed by the subsequent statement of the reasons upon which it is based. In a case stated the court cannot be called upon to find the facts from evidence, nor to pass upon the sufficiency of the reasons upon which the parties may base admissions, whether such reasons are stated or not. The duty of the court is to declare the legal conclusions upon the admitted facts. What the parties admit to be a fact is to be taken as proved, whether the court may conceive their reasons for admitting it to be good or bad. Hence we express no opinion as to the conclusiveness or even reliability of the ratio between the number of taxables and total population in

any one year as a ratio for ascertaining the population in any subsequent year, the number of taxables being known. All that is decided is that, the fact being admitted, that when the plaintiff entered on the duties of his office, the county contained more than one hundred and fifty thousand inhabitants, he is to be compensated according to the Act of March 31st, 1876, and therefore is entitled to judgment.

And now, March 9th, 1885, in accordance with the stipulations of the case stated, judgment is entered in favor of the plaintiff for the sum of two hundred ninety-one and sixty-six one hundredths dollars ($291.66).

The defendant took this writ of error, assigning for error the said judgment for plaintiff in the case stated.

*R. D. Evans*, for the plaintiff in error.—The case stated admits the fact that, at the time the officer in question assumed .the duties of his office, Luzerne county contained a population greater than one hundred and fifty thousand, but states that the last preceding decennial census showed a population less than that amount. It also shows that the population given .for 1884 is not determined by a census. The question, therefore, is whether, for purposes of classification under the various Salary Acts, a county is not to remain in the same class in which a census places it until another census removes it to another class. The question is entirely a new one. The only light we have is derived from certain analogies in the Constitution of the state, which show how the fundamental law disposes of similar questions. The legislative and judicial apportionments are both based on the population of the several districts to be formed, and it is directed that the last preceding decennial census shall be taken as the only guide to determine such population: Art. II. Sec. 16, 17 and 18, Schedule, Sec. 14.

It is also provided that " Whenever a county shall contain forty thousand inhabitants it shall constitute a separate judicial district." Yet it was held in Commonwealth ex rel. Chase *v.* Harding et al. (6 Norris, 351), that it is only after a decennial census which shows the requisite population that such district can be formed.

The decennial census of the United States is the only official determination of population, and the inconvenience and injustice that must arise from accepting any other guide to the classification of counties for salary purposes are great and manifold. If the claim of this officer is sustained, then whenever a county reaches a population requisite to pass it into a higher class, an officer elected after such time acquires a right to the larger salary. Yet he may unjustly be deprived of his

rights because the County Commissioners refuse to concede them, or the margin above the requisite population may be so small that both the commissioners and a jury before which he might bring his claim would be justified in declining the responsibility of allowing it. In a case where such margin is small, injustice must always result. Interminable janglings and litigation would follow the affirmance of the rule adopted by the court below. One board of County Commissioners may pay an officer a certain salary; a new board, elected while he is still in office, may refuse it and he may be without remedy against their action. Officers will in many cases be at the mercy of the commissioners and auditors of the county, and a wide door is thus opened to corruption. The classification of counties for this purpose ought to be fixed by an unquestionable guide. In view of these considerations, we respectfully submit that it must have been the design of the framers of the Constitution when they provided that officers in counties having a population greater than one hundred and fifty thousand, should be paid by salaries, (Art. XIV., Sec. 5,) that such population should be ascertained only by the decennial census.

*Wm. S. McLean* and *E. P. & J. Vaughan Darling*, for the defendant in error.—Because in the matter of legislative and judicial apportionment the Constitution expressly declares the population of counties shall be determined by the last United States decennial census, it does not follow, as argued by the plaintiff in error, that that shall be the sole test in the matter of the Salary Acts. Rather the contrary, for if it had been so intended it would have been so expressed in both cases. In the former there was good reason for so declaring because the Constitution provided for apportionment "immediately after each United States decennial census, and not oftener," while the terms of county officers may begin and end in the interim between two decennial censuses. For many purposes it would be intolerable to fix the population by one census and then hold it, irrespective of the fact, to be the same for every purpose for another ten years. Thus, in the creation of new counties—whilst the constitution of the judicial district remains unchanged until the next decennial census—the status of the newly erected county must depend, in other respects, upon its population—and that fact cannot be determined by the last decennial census. So also as to the salaries of officers. Nothing could be more unjust than to regulate them upon the basis of what once had been the population of the particular county. In pursuance of Section 5 of Article XIV. of the Constitution, the legislature has passed a

[Luzerne County *v.* Glennon.]

number of Acts adjusting the compensation of salaried officers upon the basis of the actual existing population. These Acts all contemplate an ascertainment of the population at the time when the officers enter upon the duties of their office. And it has, accordingly, been held that the adjustment of salaries under these acts depends upon the actual population of the county at the time the officer entered upon his office : Monroe *v.* County of Luzerne, 7 Out., 278. The objections suggested by the plaintiff in error to this reading of the statute are merely those which inhere in every case involving a contested fact. It is incumbent upon the officer claiming the benefit of the Act to establish the fact that when he entered upon his office the population of the county exceeded one hundred and fifty thousand inhabitants. In some instances the fact may be difficult, or, even impossible, to prove. But in many others, such proof may be easy and abundant. For example, the number of registered voters might in itself establish the fact. Again, as in this case, the fact may be made to appear by the established ratio between taxables and population. In the case of Luzerne county the fact is capable of proof in many other ways. Actual censuses, made for school district purposes, of different towns and districts, show an increase sufficiently large to constitute the requisite number, without allowance for any increase in the other parts of the county. It is universally conceded that the population of the county in January, 1884, was largely in excess of one hundred and fifty thousand, and it is impossible to deny that any jury would promptly so find the fact. It is distinctly admitted in the case stated, and this admission is not weakened by the stating of the facts on which the computation was based.

MR. JUSTICE STERRETT delivered the opinion of the court, May 25th, 1885.

If the case stated contained an unqualified admission or averment of fact that at the time plaintiff entered on his official duties as Recorder of Deeds in Luzerne county, the population of the county was over one hundred and fifty thousand and less than two hundred and fifty thousand, there might be something on which to base a judgment in his favor; but, there is no such admission or averment therein. The averment in the second paragraph, " That in 1880, when the last decennial census was taken, the population of Luzerne county was one hundred and thirty-three thousand and sixty-six," is distinct and positive, but the succeeding averment, viz : " and when plaintiff entered on his official duties the population of Luzerne county was over one hundred and fifty thousand, and less than two hundred and fifty thousand, based upon the rea-

sons incorporated in the following paragraph," is obviously a mere inference of fact from the data contained in the third paragraph of the case stated. The inference thus drawn from the facts, embodied in that paragraph, may possibly be correct, but it is wholly unwarranted. It is at best only a method of forming an approximate estimate. The only legally recognized method of determining the population of any particular county or district is by resorting to the last preceding decennial census; and, according to that the population of Luzerne county is less than one hundred and fifty thousand. We do not say it is not competent for the Legislature to provide some other or additional mode of determining the fact; but, until some other legal provision is made, we must be governed by the only recognized rule applicable to the subject. In Luzerne County v. Griffith, 1 Kulp, 297, this court said: "In the absence of express legislative declaration of the fact, or of any other method provided by the Legislature for ascertaining it, the last preceding decennial census is to be resorted to as the best evidence of the population of a county in case of classification of counties by population."

In the light of existing legislation, we have no doubt that for the purposes of classification under the various Salary Acts, each county must remain in the class in which the last census found it until it is transferred to another class by a subsequent census. The United States decennial census is the only official determination of population that we now have; and the inconvenience and injustice that would necessarily arise from accepting any unofficial guide to the classification of counties, for salary purposes, cannot well be overestimated. Legislative and judicial apportionments are both based on population determined by the last preceding census. The Constitution provides that "whenever a county shall contain forty thousand inhabitants it shall constitute a separate judicial district; but, in Commonwealth ex rel. Chase v. Harding, 6 Norris, 351, we held that such separate districts can only be formed after a decennial census showing the requisite population. The cases, it is true, are not exactly parallel, but the analogy is very close.

The radical error committed by the learned judge of the Common Pleas was in assuming the case stated contained an unqualified admission that the county contained a population of over one hundred and fifty thousand when plaintiff below entered on the duties of his office. This was a mistake. It contains no such admission. The statement as to population at that date, as we have already noticed, is at best but a mere inference of fact drawn from other facts which are assumed to be true. To sanction such a mode of determining population

at any given time would lead to interminable trouble and confusion. The question, as to the manner of ascertaining what the population of a county is, did not arise in Monroe *v.* County of Luzerne, 7 Out., 278. The present Chief Justice, delivering the opinion of the court in that case, says: "By what mode that population shall be ascertained does not arise in this case. The agreement of the parties settles several questions relating to the population. We therefore take that agreement as the starting point." The question, in that case, grew out of the erection of Lackawanna county in 1878, and does not rule the point upon which this case turns. In that case the facts in regard to the population in the respective parts composing the old and the new county were distinctly stated as they appeared by the census of 1870.

Judgment reversed, and now judgment for defendant below on the case stated.